JONES & MAYER
James R. Touchstone, SBN 184584
Jeremy B. Warren, SBN 199583
Denise L. Rocawich, SBN 232792
3777 North Harbor Boulevard
Fullerton, California 92835
(714) 446-1400; Fax (714) 446-1448
e-mail: jrt@jones-mayer.com; dlr@jones-mayer.com

Attorneys for Defendants OFFICER BRETT BECKSTROM, OFFICER TYLER MOSER, OFFICER MICHAEL LOPEZ, and OFFICER ANGEL ROMERO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW AARON RIVERA, individually and as a successor in interest to DANIEL RIVERA,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES; OFFICER BRETT BECKSTROM; OFFICER TYLER MOSER; OFFICER MICHAEL LOPEZ; OFFICER ANGEL ROMERO; Police Chief MICHEL MOORE, in his individual, and official capacity; and DOES 1-10, inclusive.,<br><br>Defendants. | Case No.: 2:21-cv-02957-FWS-MAR<br>*Judge: Hon. Fred W. Slaughter*<br><br>**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Final Pre-Trial Conf.: March 7, 2024<br>Time: 8:30 a.m.<br>Ctrm: 10D |

# MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Pursuant to Local Rule 16-4, Defendants OFFICER BRETT BECKSTROM; OFFICER TYLER MOSER; OFFICER MICHAEL LOPEZ; OFFICER ANGEL ROMERO ("Defendants" or "Officer Defendants"), respectfully submit the following Memorandum of Contentions and Fact and Law in the above-captioned matter, which is set for trial on April 16, 2024.

## I. INTRODUCTION AND FACTUAL STATEMENT

On August 14, 2020, Los Angeles police were dispatched to the 13500 block of Wingo Street in Arleta with regard to a burglary suspect, later identified as Daniel Rivera ("Mr. Rivera"), in the area who had attempted to break a window of a residence attempting to get inside. An air unit responded overhead and broadcast that the suspect appeared to be intoxicated, was making his way toward the drainage wash, and appeared to be attempting to enter another home while residents were seemingly inside. Officers on the ground arrived as Mr. Rivera continued toward the chain link fence of the wash. Mr. Rivera then climbed over the fence into the wash and went down the steep embankment. Eventually, Mr. Rivera was laying on the ground at the bottom of the wash.

Officers Beckstrom, Lopez, Moser and Romero went into the bottom of the wash. The officers planned for Lopez to provide less-lethal cover with a beanbag shotgun, for Beckstrom and Romero to arrest Mr. Rivera, and for Moser to provide communications support. Before they approached, officers ordered Mr. Rivera to roll on his stomach and show his hands, but he did not comply. The officers approached and Beckstrom and Romero and grabbed Mr. Rivera's right and left arms, respectively. Immediately upon contact, Mr. Rivera tensed up his arms and pulled them toward himself. Moser warned Mr. Rivera he may be Tased if he physically resisted. Lopez then moved in to assist with the arms and Beckstrom straddled Mr. Rivera's lower back. Romero applied a handcuff to Mr. Rivera's left wrist. Mr. Rivera grabbed the handcuffs, preventing them from being

attached to his right wrist. Moser heard officers telling Mr. Rivera to "let go" of the handcuffs. Moser was concerned that Mr. Rivera could use the handcuff as a potentially deadly weapon. The officers continued to struggle with Mr. Rivera. Moser gave a second warning that Mr. Rivera would be Tased if he did not stop. Moser saw Mr. Rivera attempting to buck Beckstrom off. Moser applied the Taser in a close contact drive stun mode for localized pain compliance. The first Taser use appeared ineffective and Mr. Rivera continued to resist. Moser moved the body of the Taser to the calf, warned again of the Taser, and deployed the Taser again. Mr. Rivera continued to resist officers' efforts to get him handcuffed.

## II. PROCEDURAL HISTORY

The Officer Defendants were granted summary judgement in part. Plaintiff appealed and the Ninth Circuit revered the grant of summary judgment and remanded the case. The Officer Defendants have filed a Petition for Writ of Certiorari in the United States Supreme Court, which is currently pending. The state law claims were dismissed and are pending in state court. The City of Los Angeles and Police Chief Moore have been dismissed from the case. Therefore, the only remaining claims are the Section 1983 claims against the Officer Defendants.

## III. CONTENTIONS OF LAW

### A. The Officer Defendants Were Justified in Investigating This Incident.

The proper inquiry for an investigative detention is not whether there was probable cause, which applies to full custodial arrests, but rather whether or not there was a reasonable suspicion of criminal activity. *Berkemer v. McCarthy,* 468 U.S. 420, 439, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984). Accordingly, the initial stop must have been justified at its inception, and the officers' actions during the detention must have been reasonably related in scope to the circumstances justifying the interference. *Terry v. Ohio,* 392 U.S. 1, 20, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Consequently, a detention to conduct an investigation upon

observing an individual running from a security guard, coupled with information that the suspect had pointed a weapon at the security guard was entirely reasonable, justified and appropriate. *Whren v. United States,* 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) (stating that a stop is reasonable where police have probable cause to believe that a traffic violation was committed).

Ultimately, a detention is reasonable under the Fourth Amendment if the detaining officer has a reasonable suspicion to believe that criminal activity may be occurring, has already taken place or was about to. *Illinois v. Wardlow,* 528 U.S. 119, 123-124 (2000). The standard set forth as "reasonable suspicion" requires much less evidence than that of the "probable cause" standard," and even less than the preponderance of the evidence. *Illinois v. Wardlow,* 528 U.S. 119, 123-124 (2000). Interestingly, there is no bright-line rule to determine when an investigatory stop or its functional equivalent becomes an arrest. *United States v. Parr,* 843 F.2d 1228, 1231 (9th Cir. 1988). Rather, in determining whether stops have turned into arrests, Courts consider the "totality of the circumstances." *United States v. Del Vizo,* 918 F.2d 821, 824 (9th Cir. 1990). In looking at the totality of the circumstances, Courts consider both the intrusiveness of the stop, and the justification for the use of certain tactics, i.e. whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken. *United States v. Jacobs,* 715 F.2d 1343, 1345-46 (9th Cir. 1983) (per curiam). "The relevant inquiry is always one of reasonableness under the circumstances." *Allen v. City of Los Angeles,* 66 F.3d 1052 (9th Cir. 1995) (quoting *United States v. Sanders,* 994 F.2d 200, 206 (5th Cir.), cert. denied, 510 U.S. 1014 (1993)). Moreover, there is "no per se rule that detention in a patrol car constitutes an arrest." *United States v. Parr,* 843 F.2d 1228, 1230 (9th Cir. 1988); See also *United States v. Torres-Sanchez,* 1996 U.S. App. LEXIS 17314 (concluding that detention did not turn into de facto arrest when officer asked nervous passenger to enter patrol car to confirm or dispel his suspicion that

vehicle stolen when vehicle had no license plates and no registration could be produced).

The initial detention/contact carried with it the right of the Defendant Officers to utilize some amount of force because of officer safety concerns and the actions of Mr. Rivera. Ultimately, based upon information obtained from dispatch, along with their own observations, Mr. Rivera's overall bizarre behavior, coupled with his actions, the Defendant Officers had no alternative but to react to his unreasonable, irrational and aggressive actions towards them, ultimately forcing the Officer Defendants to follow him. When they observed Mr. Rivera at the bottom of the wash, they attempted to restrain and control him. Unfortunately, when they attempted to make contact with Mr. Rivera, he became non-cooperative and began to physically resist the Officer Defendants and attempted to overcome their lawful attempts to handcuff him.

### B. The Officer Defendants Were Acting Under Color of Law and Entitled to Use Reasonable Force.

The Officer Defendants were privileged to use reasonable force to attempt to restrain and control the aggressive actions of Mr. Rivera in trying to flee from the officers and on that basis to defend themselves against Mr. Rivera's aggressive and threatening movement/actions, which demonstrated that he was not complying with their lawful requests. Moreover, unlike private citizens, police officers act under color of law to protect the public interest. They are charged with acting affirmatively and using force as part of their duties, because 'the right to make an arrest or investigatory stop necessarily carried with it the right to use some degree of physical coercion or threat thereof to effect it.' *Graham v. Connor*, 490 U.S. 386, 396. They are, in short, not similarly situated to the ordinary battery defendant and need not be treated the same. In these cases, then, 'the defendant police officer is in the exercise of the privilege of protecting the public peace and order [and] he is entitled to the even greater use of force than might be in the same

1 circumstances required for self-defense [T]he burden of proof [is] upon the
2 plaintiff to establish the use of excessive force.' *Edson v. City of Anaheim* (1998)
3 63 Cal. App. 4th 1269, 1273. "It is well-settled that when an officer
4 reasonably believes force is necessary to protect his own safety [safety of
5 Plaintiff] or the safety of the public, measures used to restrain individuals, such as
6 stopping them at gunpoint and handcuffing them are reasonable." *Alexander v.*
7 *County of Los Angeles,* 64 F. 3d 1315 (9th Cir. 1995).

In this matter, the Defendant Officers acted pursuant to California Penal Code, section 835(a) and lawfully under the Fourt Amendment because they reasonably believed, based upon information obtained from dispatch, as well as their own observations, including Mr. Rivera's overall bizarre and aggressive actions in attempting to prevent being handcuffed, that they had no alternative but to react to his unreasonable, irrational and aggressive actions towards them, ultimately forcing the Officer Defendants to attempt to restrain and control Mr. Rivera.

### C. *Plaintiff Cannot Sustain a Cause of Action under 42 U.S.C. § 1983.*

To sustain a claim for relief under § 1983, a Plaintiff must demonstrate that he or she was deprived of a right secured by the Constitution or laws of the United States, and that any such deprivation was achieved under color of law. *Paul v. Davis,* 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed 2d 405 (1975); *Adickes v. Kress & Co.,* 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 508 (1979). Section 1983 does not, standing alone, create any equal or civil rights of citizens; rather, it provides a remedy for rights guaranteed by the Constitution or laws of the United States. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S. Ct. 1905, 60 L. Ed. 2d 508 (1979). Thus, the first inquiry in a § 1983 claim is to determine "whether the plaintiff has been deprived of a right secured by the Constitution and laws" of the United States. *Martinez v. California,* 444 U.S. 277, 284, 62 L. Ed. 2d 481, 100 S. Ct. 553 (1980). In the instant case, this initial inquiry is dispositive,

as Plaintiff cannot established a deprivation of an identifiable constitutional right so as to warrant relief under § 1983.

### *D. The Use of Force Was Objectively Reasonable under the Circumstances.*

"Police officers are entitled to employ reasonable methods to protect themselves and others in potentially dangerous situations." Police officers also "need not avail themselves of the least intrusive means of responding to an exigent situation." *Scott v. Heinrich,* 39 F. 3d 912, 915 (9th Cir. 1994). "The relevant inquiry is always one of reasonableness under the circumstances." *United States v. Sanders,* 994 F. 2d 200, 206 (5th Cir.), cert. denied, 126 L Ed. 2d 355, 114 S. Ct. 408 and 114 S. Ct. 608 (1993). Plaintiff has failed to establish that the Defendant Officers' conduct violated Mr. Rivera's Fourth Amendment rights. As to any force that was used, "[i]t is well-settled that when an officer reasonably believes force is necessary to protect his own safety or the safety of the public, measures used to restrain individuals, such as stopping them at gunpoint and handcuffing them are reasonable." *Alexander v. County of Los Angeles,* 64 F. 3d 1315 (9th Cir. 1995).

Fourth Amendment excessive force claims are evaluated under a standard of "objective reasonableness." *Graham v. Conner,* 490 U.S. 386, 395, 104 L Ed. 2d 443, 109 S. Ct. 1865 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake. [Citations omitted.] Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. [Citation omitted.]" Ibid. The reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene, rather than with 20/20

hindsight. Id. at 109 S. Ct. 1872. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Ibid. The inquiry is one of "objective reasonableness" under the circumstances, and the officer's motivations or evil intentions have no place in that in that inquiry. Id. at 109 S. Ct. 1873. Section 1983 is intended to remedy egregious conduct, and not every assault or battery. . .will create liability under it." *Haberthur v. City of Raymore,* 119 F. 3d 720, 723 (9th Cir. 1997).

Plaintiff's main issue surrounds the constitutional right against unreasonable seizure, namely unreasonable force. The appropriate inquiry in these instances is based upon the Fourth Amendment. *Graham v. Conner, supra,* 490 U.S. 386 at 395. In this instance, it was objectively reasonable for the Defendant Officers to use force against Mr. Rivera for officer safety reasons, self-defense and defense of others. The only reasonable conclusion that can be drawn from the uncontroverted evidence is that the Defendant Officer's conduct was reasonable under the circumstances.

### E. Plaintiffs allege a deprivation of familial relations under the Fourteenth Amendment.

In order to prove a claim for loss of familial association, Plaintiffs must demonstrate that an officer's use of force "**shocks the conscience**" under either a "deliberate indifference" or the more rigorous "purpose to harm unrelated to legitimate law enforcement objective" standard. *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). The "critical consideration is whether the circumstances are such that actual deliberation is practical." *Id*(citations omitted). Defendants contend that the facts here did not afford the officers ample time to deliberate, and therefore the "purpose to harm" standard should apply.

## IV. EVIDENTIARY ISSUES

The Officer Defendants have filed five (5) Motions in Limine.

## V. ISSUES OF LAW

The primary issues of law are that the force used by the Defendant Officers was objectively reasonable under the totality of the circumstances. Additionally, are the issues of whether the Officer Defendants are entitled to qualified immunity.

## VI. BIFURCATION OF ISSUES

Defendants request that the issues of liability be tried separately from the issues of compensatory and punitive damages. In the furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, the court may order a separate trial of any claim or of any separate issue. F.R.Civ.P. 42(b). In this case, trying liability issues separate from compensatory and punitive damage issues fosters convenience and is conducive to the expeditious and economical trial of this action. There is no need to reach the damages phase, both compensatory and punitive, of the case unless liability has been established.

## VII. ATTORNEY'S FEES

Defendants submit that the prevailing party upon a civil rights cause of action is entitled to attorneys fees pursuant to 42 U.S.C. Section 1988.

//
//
//
//
//
//
//
//

## VIII. ABANDONMENT OF ISSUES

The state law claims, and the Section 1983 *Monell* claim against the City of Los Angeles have been dismissed. Police Chief Moore has been dismissed. The Officer Defendants are the only remaining defendants in the case.

Dated: February 8, 2024        JONES & MAYER

By: *[signature]*
JAMES R. TOUCHSTONE
JEREMY B. WARREN
DENISE L. ROCAWICH
Attorneys for Defendant Officers
Beckstrom, Moser, Lopez, and Romero