James R. Touchstone, Esq., SBN 184584
jrt@jones-mayer.com
Denise L. Rocawich, Esq., SBN 232792
dlr@jones-mayer.com
Jeremy B. Warren, Esq. SBN 199583
JONES MAYER
3777 North Harbor Boulevard
Fullerton, CA 92835
Telephone: (714) 446-1400
Facsimile: (714) 446-1448

Attorneys for Defendants OFFICER BRETT
BECKSTROM; OFFICER TYLER MOSER;
OFFICER MICHAEL LOPEZ; OFFICER ANGEL
ROMERO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.A.R., a minor, by and through his Guardian ad litem, ELISABETH BARRAGAN, individually, and as a successor in interest to DANIEL RIVERA; SILVIA IMELDA RIVERA, individually,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES; OFFICER BRET BEKSTROM; OFFICER TYLER MOSER; OFFICER MICHAEL LOPEZ; OFFICER NATHAN RAMOS; OFFICER ANGEL ROMERO; Police Chief MICHEL MOORE, in his individual, and official capacity; and DOES 6-10, inclusive,<br><br>Defendants. | Case No.: 2:21-cv-02957-FWS-MAR<br><br>*Judge: Hon. Fred W. Slaughter*<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE INFORMATION UNKNOWN TO DEFENDANTS AT THE TIME OF THEIR USE OF EXCESSIVE FORCE**<br><br>*Pre-Trial Conference*:<br>Date:   March 7, 2024<br>Time:  8:30 a.m.<br>Crtrm: 10D<br><br>*Trial*<br>Date:   April 16, 2024<br>Time:  8:30 a.m.<br>Crtrm: 10D<br><br>Action Filed: April 6, 2021 |

Defendants OFFICER BRETT BECKSTROM; OFFICER TYLER MOSER;

OFFICER MICHAEL LOPEZ; OFFICER ANGEL ROMERO (hereinafter "Officer

Defendants" or "Defendants") jointly provide the following objections and points and

1   authorities in opposition in Plaintiffs' Motion in Limine No. 1 to exclude information

2   unknown to Defendants at the time of their use of excessive force:

3

4   Dated:  February 15, 2024        Respectfully submitted,

5                                     JONES MAYER

6

7                                     By: _____

8                                          James R. Touchstone
                                           Denise L. Rocawich
9                                          Jeremy B. Warren
                                           Attorneys for Defendants Officer Brett
10                                         Beckstrom; Officer Tyler Moser; Officer
                                           Michael Lopez; Officer Angel Romero

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2  **I.      <u>INTRODUCTION.</u>**

3      Plaintiffs have moved in limine for an order excluding any evidence, including

4  911 calls, testimony of 911 callers, and evidence of Daniel Rivera's ("Rivera")

5  activities prior to entering the wash that Plaintiffs contend was unknown to the

6  Officer Defendants at their time of the uses of force. First, Defendants object to the

7  title of the Plaintiffs' Motion in Limine No. 1 in that it references the Officer

8  Defendants' alleged "excessive" uses of force. The Officer Defendants deny that they

9  used excessive force against Rivera during the arrest. The central issue in this case is

10  that the use of force was objectively reasonable and not excessive.

11      The arguments in the Motion lack merit as the information leading up to the

12  arrest of Rivera is highly relevant under the Federal Rules of Evidence and caselaw.

13  Rivera's conduct prior to entering the wash is probative as to the force used by the

14  Officer Defendant as set forth herein. Accordingly, Defendants respectfully request

15  that Plaintiffs' Motion in Limine No. 1 be denied.

16  **II.     <u>EVIDENCE OF THE CRIMINAL ACTIONS OF RIVERA PRIOR TO</u>**

17      **<u>HIM FLEEING AND ENTERING THE WASH ARE RELEVANT TO</u>**

18      **<u>THE ISSUES IN THIS CASE AND SHOULD NOT BE EXCLUDED.</u>**

19      Evidence is relevant (even if it is not dispositive) if such evidence has "any

20  tendency to make a fact more or less probable than it would be without the evidence"

21  and the fact at issue is "of consequence to determining the action." *See* Fed. R. Evid.

22  401.

23      In *Dominguez v. City of Los Angeles*, 2018 U.S. Dist. LEXIS 224976 (C.D.

24  Cal. October 9, 2018), which was an officer-involved shooting case, the District

25  Court ruled on a Motion in Limine and stated that "Courts may permit the

26  introduction of information unknown to an officer at the time of the shooting."

27  *Quoting Graham v. Connor*, 490 U.S. 386 at 399 n.12 ("[I]n assessing the credibility

28  of an officer's account of the circumstances that prompted the use of force, a

1  factfinder may consider . . . evidence that the officer" did not know at the time of the
2  alleged rights violation.); and *Boyd v. City & County of San Francisco*, 576 F.3d 938,
3  944 (9th Cir. 2009) (upholding district court's admission of evidence outside the
4  defendant officers' knowledge at the time of a fatal shooting because that information
5  made more or less probable each side's explanation of the decedent's conduct). 2018
6  U.S. Dist. LEXIS 224976 at *4-5.

7      In *Dominguez*, the Court was not even addressing evidence immediately
8  preceding the use of force, as in this case. Rather the Court was analyzing the
9  introduction of the decedent's prior marijuana use, alleged gang affiliation, alleged
10  issues at home and school, and photographs showing the decedent posing with other
11  individuals and graffiti. *Id.* at * 3. Plaintiffs asserted that the Court should exclude
12  this information because it was unknown to police officers at the time of the shooting.
13  *Id.* at * 3-4. Additionally, Plaintiffs argued that this information is irrelevant to the
14  objective reasonableness of the officers' conduct under *Graham* and unfairly
15  prejudicial. *Id.* at * 3.

16      As set forth above, the Court denied the Motion in Limine to exclude such
17  evidence and stated "the Court will not exclude this evidence solely because the
18  officers were not aware of it before the shooting" and continued to examine each
19  piece of evidence individually. *Id.* at * 4-5. *See also M.A.C. v. City of Los Angeles*
20  2018 U.S. Dist. LEXIS 238114 (C.D. Cal. January 24, 2018)0 [ruling on a Motion in
21  Limine that decedent's alleged intoxication (either by alcohol or narcotics) at the time
22  of the shooting was admissible even when unknown to the shooting officer).

23      In *Boyd v. City & County of San Francisco*, *supra,* the Ninth Circuit upheld
24  the District Court's denial of Motions in Limine in which the plaintiffs sought to
25  exclude several items of evidence that they alleged were unknown to the officers,
26  including prior arrests and lawsuits, a prior high speed chase involving the decedent
27  and evidence that the decedent had drugs in his system at the time he was shot. *Boyd,*
28  576 F.3d at 943-944. The plaintiffs challenged the relevancy of most of the evidence

1    and argued that the shooting officer did not know of the existence of such evidence

2    prior to the shooting, and the only issue in front of the jury was whether the shooting

3    officer's actions were reasonable based on his perspective at the time. *Id.* The Ninth

4    Circuit confirmed that the District Court properly admitted the evidence and stated

5    "[u]nder the relevancy analysis prescribed by the Federal Rules, all of the challenged

6    evidence was properly admitted, since it had a tendency to make a fact of

7    consequence more or less probable. Fed. R. Evid. 401." *Id.* at 944.

8         Moreover, despite the arguments in Motion in Limine No. 1 about excluding

9    evidence that was not specifically conveyed to the Officer Defendants, such

10   arguments are immaterial. It has been consistently held that when, as in this case,

11   officers work in close concert, a court may consider the collective knowledge of the

12   officers in considering their beliefs concerning probable cause or reasonable

13   suspicion. *Burrell v. McIlroy*, 423 F.3d 1121, 1124 (9th Cir. 2005); *see also United

14   States v. Hensley*, 469 U.S. 221 (1985) and *United States v. Robinson*, 536 F.2d 1298,

15   1299 (9th Cir. 1976).

16        Plaintiffs' entire motion depends on the Court holding that any evidence not

17   known to the Defendant Officers at the time of the incident must not be presented to

18   the jury. Plaintiffs base their argument on obiter dictum found in footnote 8 of *Glenn

19   v. Washington County*, 673 F.3d 864, 873 (9th Cir. 2011). But the *Glenn* Court did

20   not even consider a relevance issue, but rather was a review of the granting of

21   summary judgment, not the admissibility of evidence needed by the jury to assess the

22   appropriateness of the officer's response.

23        The evidence at issue in the cases above predated the subject incidents and was

24   held to be admissible to assess the objective reasonableness of the officers' actions.

25   In this case, Plaintiffs are attempting to exclude evidence of Rivera's conduct

26   immediately preceding the Defendant Officers' arrival and their use of force. Such

27   arguments simply do not make sense. As an initial matter, exclusion of such evidence

28   would confuse the jury as they would not have before them the foundational facts of

- 5 -

DEFENDANTS OPPOSITION TO MOTION IN LIMINE NO. 1

1 | the incident.

2 |      The evidence will show that the Defendant Officers were made aware of the

3 | fact that Rivera was attempting to burglarize houses while residents were present as

4 | they were listening to the radio communications as they were responding to the scene.

5 | (*See Exhibit A,* Deposition Transcript of Officer Tyler Moser, 8:23- 9:16; *Exhibit B*,

6 | Deposition Transcript of Officer Bret Beckstrom, 11:6-13:6). The exclusion of such

7 | evidence including 911 calls, testimony of 911 callers and any information except

8 | that was specifically communicated to the Defendant Officers, would highly

9 | prejudice the Officer Defendants. Fed. R. Evid. 403. The jury would not be in a

10 | position to assess why the officers responded to the scene, why they attempted to

11 | arrest Rivera, why Rivera acted the way he did and why the force used was

12 | objectively reasonable.

13 |      In addition, Rivera's volatile criminal conduct, occurring immediately prior to

14 | the use of force, is relevant to Rivera's intent and his actions.  He must have known

15 | that he had just attempted to enter and burglarize homes of citizens in the

16 | neighborhood and had threatened a resident with a weapon.  Rivera had extensive

17 | experience in the criminal justice system, which is evidenced from his past

18 | convictions and arrests.  He undoubtedly knew the criminal implications of what he

19 | had done and that he would be arrested for the criminal conduct.  For this reason, the

20 | evidence is critical to establishing the level of resistance Rivera presented and why it

21 | necessitated the degree of force required to take him into custody.

22 |      Accordingly, such evidence is also admissible under Section 404(b) in that it

23 | proves motive, opportunity, intent, preparation, plan, knowledge, identity, absence

24 | of mistake, or lack of accident. Therefore, since the evidence is conduct that is

25 | immediately prior to the use of force, it is certainly admissible under Rule 401 and

26 | 402 also and must be admitted.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**III.    CONCLUSION.**

Defendants respectfully request that Plaintiffs' Motion in Limine No. 1 be denied.

Dated:  February 15, 2024          Respectfully submitted,

JONES MAYER

By: _____
James R. Touchstone
Denise L. Rocawich
Jeremy B. Warren
Attorneys for Defendants Officer Brett
Beckstrom; Officer Tyler Moser; Officer
Michael Lopez; Officer Angel Romero

1

## DECLARATION OF JEREMY WARREN

2    I, Jeremy Warren, declare:

3        1.      I am an attorney licensed to practice law in the State of California and

4    before this Court.  I am a partner in the law firm of Jones Mayer, counsel of record

5    for Defendants Officers Brett Beckstrom, Tyler Moser, Michael Lopez, and Angel

6    Romero. This Declaration is submitted in support of Defendant Officers Opposition

7    to Motion in Limine No. 1 to exclude any evidence, testimony, argument, or

8    reference at trial to information unknown to the Defendant Officers at the time of

9    their uses of force. If called as a witness, I would and could competently testify to

10   all of the facts contained within this declaration based upon my personal

11   knowledge.

12   2.       A true and correct copy of Defendant Bret Breckstom's deposition transcripts

13   is attached hereto as Exhibit "A".

14   3.       A true and correct copy of Defendant Tyler Moser's deposition transcripts is

15   attached hereto as Exhibit "B".

16

17       I declare under penalty of perjury under the laws of the United States that the

18   foregoing is true and correct. Executed this 15th of February, 2024, at Fullerton,

19   California.

20

21   _____

22   Jeremy Warren

23

24

25

26

27

28

# EXHIBIT "A"

December 15, 2021

1

1                 UNITED STATES DISTRICT COURT

2               CENTRAL DISTRICT OF CALIFORNIA

3

4   M.A.R., a minor, by and through  )
     his Guardian ad litem ELISABETH  )
5   BARRAGAN, individually, and as a  )
     successor in interest to DANIEL   )
6   RIVERA; SILVIA IMELDA RIVERA,     )  Case No.
     individually,                     )  2:21-CV-02957-
7                              )  JFW(MARx)
               Plaintiffs,        )
8                              )
        vs.                      )
9                              )
     CITY OF LOS ANGELES; OFFICER     )
10  BRET BEKSTROM; OFFICER TYLER     )
     MOSER; OFFICER MICHAEL LOPEZ;    )
11  OFFICER NATHAN RAMOS; OFFICER    )
     ANGEL ROMERO; Police Chief      )
12  MICHEL MOORE, in his individual,  )
     and official capacity; and DOES   )
13  5-10, inclusive,              )
                              )
14              Defendants.       )
     _____)
15

16

17             NON-CONFIDENTIAL TRANSCRIPT

18          VIDEOTAPED ZOOM DEPOSITION OF

19            OFFICER BRETT BECKSTROM

20          Wednesday, December 15, 2021

21

22

23  Reported by:  Lori Arias
              CSR No. 9433
24

25  NDS Job No.:  247882

December 15, 2021

11



1    shift that day?

2        A.    The hours or -- what do you mean?

3        Q.    I guess the hours would be most

4    informative.

5        A.    6:30 a.m. to 6:30 p.m.                       09:44:33

6        Q.    And when did you first become aware that

7    there was an incident which eventually led you to

8    the wash that's adjacent to Wingo Street?

9        A.    I don't recall the exact time, but it was

10   towards the end of our shift.                          09:44:59

11       Q.    What information were you initially

12   provided?

13       A.    It was a radio call of a burglary suspect.

14       Q.    And where were you when you received that

15   information?                                           09:45:17

16       A.    Mission Station.

17       Q.    Can you approximate for me how far Mission

18   Station is from the eventual stopping point that

19   afternoon?

20       A.    Not off the top of my head.                  09:45:33

21       Q.    Did you drive from Mission Station to

22   Wingo Street next to the wash?

23       A.    My partner was driving.  I was the

24   passenger.

25       Q.    And was your partner Officer Moser that     09:45:47

December 15, 2021

12

1   day?

2       A.   Yes.

3       Q.   It's been previously approximated about

4   eight miles.

5            Does that sound right to you?               09:45:57

6       A.   That sounds approximately correct.

7       Q.   Now, as -- when the call came in, did you

8   immediately go from Mission Station to the location

9   or as soon as you could?

10      A.   Yes.                                         09:46:13

11      Q.   And as you were traveling and -- as a

12  passenger in that vehicle, was the airship -- was

13  there an airship that had alerted to the scene that

14  was communicating information over the radio?

15      A.   There was.                                   09:46:29

16      Q.   And were you listening to those

17  communications in order to receive more information

18  about what you might confront when you got to the

19  location?

20      A.   Yes.                                         09:46:42

21      Q.   What information was provided to you?

22      A.   I don't specifically remember exactly what

23  the airship said.

24      Q.   Okay.  I understand that you can't

25  specifically remember.  Can you give me your best     09:46:54

December 15, 2021

13

1   recollection?

2      A.   My best recollection was the airship

3   sighted a possible suspect that matched the

4   description provided in the call.

5      Q.   Did the airship call for an RA?          09:47:08

6      A.   Yes.

7      Q.   Did the airship state that the individual

8   fell down the embankment to the wash and could be

9   possibly injured?

10     A.   Not that I can recall.                   09:47:24

11     Q.   Did the airship communicate that the

12  individual was seen walking, stumbling, falling

13  such that the -- it was believed that the

14  individual was under the influence of some drugs?

15     MR. CHA:  Objection, that's compound and lacks 09:47:42

16  foundation and calls for speculation.

17     THE WITNESS:  I do not recall the airship

18  saying anything to that nature.

19  BY MR. DeSIMONE:

20     Q.   When you arrived at the location, what was 09:48:06

21  the first thing you observed?

22     MR. CHA:  Objection, that's vague and ambiguous

23  as to "the location."

24     THE WITNESS:  Would you like the -- what I saw

25  the possible suspect doing or my actual sight at -- 09:48:22

December 15, 2021

141

1                                          CERTIFICATE

2                                                OF

3                              CERTIFIED SHORTHAND REPORTER

4

5

6                I, Lori L. Arias, Certified Shorthand Reporter

7       of the State of California, do hereby certify:

8                That the foregoing deposition was taken before

9       me at the time and place therein set forth, at which

10      time the witness was duly sworn by me;

11               That the testimony of the witness and all

12      objections made at the time of examination were

13      recorded stenographically by me and thereafter

14      transcribed, said transcript being a true copy of my

15      shorthand notes thereof, and a true record of the

16      testimony given by the witness.

17               IN WITNESS WHEREOF, I have subscribed my name

18      this 7th day of January, 2022.

19

20

21

22                                   Lori L. Arias, CSR

23                                   Certificate No. 9433

24

25

# EXHIBIT "B"

1               UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3

4    M.A.R., a minor, by and through  )
     his Guardian ad Litem, ELISABETH )
5    BARRAGAN, individually, and as   )
     a successor in interest to       )
6    DANIEL RIVERA; SILVIA IMELDA     )
     RIVERA, individually,            )
7                                     )
               Plaintiffs,            )
8                                     )
     vs.                              )  Case No. 2:21-CV-
9                                     )  02957-JFW(MARx)
     CITY OF LOS ANGELES; OFFICER     )
10   BRET BEKSTROM; OFFICER TYLER     )
     MOSER; OFFICER MICHAEL LOPEZ;    )
11   OFFICER NATHAN RAMOS; OFFICER    )
     ANGEL ROMERO; POLICE CHIEF       )
12   MICHEL MOORE, in his individual  )
     capacity and official capacity;  )
13   and DOES 5-10, inclusive,        )
                                      )
14             Defendants.            )
     _____)

15

16

17            - NON-CONFIDENTIAL PORTIONS -

18

19          DEPOSITION BY VIDEOCONFERENCE OF

20             OFFICER TYLER RYAN MOSER

21          WEDNESDAY, DECEMBER 15, 2021

22

23

24   Reported by:  Aileen Neitzert
                   CSR No. 5318
25   Job No.:      247885

                                                        1

```
1          Q.   Were you at approximately that same weight in

2    August of 2020?

3          A.   I was a little bit heavier then.  I was around

4    230, 235 then.

5          Q.   All right.  As a police officer do you engage   14:24:15

6    in activities to keep yourself in shape?

7          A.   Yes.

8          Q.   Do you go to the gym?

9          A.   Yes.

10         Q.   You work out with Officer Beckstrom?            14:24:34

11         A.   Not anymore, but during the incident we were

12   working out together, yes.

13         Q.   And how long were you and Officer Beckstrom

14   partners prior to August of 2020?

15         A.   Between a year and a half to two years.         14:24:49

16         Q.   Are you still partners?

17         A.   Yes, sir.

18         Q.   Now, taking you back to that day, you were the

19   driver of the vehicle, police vehicle, that came to the

20   scene from Mission station to Wingo Street by the wash     14:25:06

21   there?

22         A.   Yes.

23         Q.   And were you listening -- were you listening to

24   communications from the airship during that drive and

25   after you exited the vehicle?                              14:25:23
```

1    A.    Yes.

2    Q.    And what information did you receive from the

3    airship regarding the subject that we later learned was

4    Daniel Rivera?

5         MR. CHA:   Object.   It's vague as to time.        14:25:37

6    Q.   BY MR. DeSIMONE:   You can answer.

7    A.    Sure.   Prior to our arrival that -- I can't

8    recall specifically if the airship saw Rivera in the

9    backyard or the front yard but that she observed him

10   running through multiple houses and then shortly --      14:25:57

11   shortly before our arrival, within maybe 30 seconds,

12   that a bunch of residents that were on Wingo Street had

13   came out to the street.

14   Q.    You could see those residents?

15   A.    The airship saw them.   They -- she told us that   14:26:17

16   the residents were walking out onto the street.

17   Q.    Did the airship tell you that she had observed

18   Mr. Rivera stumbling and falling down and crawling

19   prior to the time he got to the wash?

20   A.    Not that I recall, but I do remember her saying    14:26:34

21   that he was either actively forcing his way into a

22   house or he was at a window or a door.   I can't

23   remember specifically.

24   Q.    Did the airship communicate that, based on his

25   actions, it appeared that he was under the influence?    14:26:52

9

Tyler Ryan Moser                                                                 December 15, 2021

```
 1   STATE OF CALIFORNIA      )
                              )
 2   COUNTY OF LOS ANGELES    )

 3

 4           I, AILEEN NEITZERT, do hereby certify:

 5

 6           That I am a duly qualified Certified Shorthand

 7   Reporter, in and for the State of California, holder of

 8   certificate number 5318, which is in full force and

 9   effect, and that I am authorized to administer oaths and

10   affirmations;

11           That the foregoing deposition testimony of the

12   herein named witness was taken before me at the time and

13   place herein set forth;

14           That prior to being examined, the witness named

15   in the foregoing deposition, was duly sworn or affirmed

16   by me, to testify the truth, the whole truth, and

17   nothing but the truth;

18           That the testimony of the witness and all

19   objections made at the time of the examination were

20   recorded stenographically by me and were thereafter

21   transcribed under my direction and supervision;

22           That the foregoing pages contain a full, true,

23   and accurate record of the proceedings and testimony to

24   the best of my skill and ability;

25           That correction and signature by the witness was
```

96

Tyler Ryan Moser                                                          December 15, 2021

1    requested.

2            I further certify that I am not a relative

3    or employee or attorney or counsel of any of the

4    parties, nor am I financially interested in the outcome

5    of this action.

6

7            IN WITNESS WHEREOF, I have subscribed my name

8    this 29th day of December, 2021.

9

10

11   _____
     AILEEN NEITZERT, CSR NO. 5318
12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                                    97